DWIGHT C. HOLTON, OSB #090540
United States Attorney
District of Oregon
FRANK R. PAPAGNI, JR., OSB #762788
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Facsimile: (541) 465-6917
frank.papagni@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| UNITED STATES OF AMERICA, | ) Case No. 10-CR 60066-HO |
|---|---|
| Plaintiff, | ) **UNITED STATES' OPPOSITION** |
| | ) **TO DEFENDANTS' MOTION FOR** |
| v. | ) **CHANGE OF VENUE AND** |
| | ) **EVIDENTIARY HEARING** |
| STEVEN DWIGHT HAMMOND, | ) |
| DWIGHT LINCOLN HAMMOND, JR. | ) |
| | ) |
| Defendants. | ) |

The United States of America, by and through Dwight C. Holton, United States Attorney for the District of Oregon, and Frank R. Papagni, Jr., Assistant United States Attorney, respectfully opposes Defendants' motions for change of venue and evidentiary hearing. Trial in this matter is currently scheduled for October 5, 2011.

PAGE 1 - GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE AND EVIDENTIARY HEARING

# INTRODUCTION

In June 2010, a grand jury sitting in Eugene, Oregon, returned a nineteen count indictment charging Defendants with committing federal crimes in Harney County from August 1982 through August 2006 (CR 1). Magistrate Judge Coffin concurred with the parties' assessment that the case was complex and scheduled trial to begin in Eugene on November 17, 2010 (CR 6). On November 8, 2010, Defendants' motion to postpone the trial until October 5, 2011, was allowed so they could conduct further investigation (CR 11). The Government opposed the 295-day postponement and wanted a trial in June 2011. *Id.* The parties estimated the trial would last 13 days. *Id.*

Following the parties' failure pre- and post-indictment to resolve this case, on March 21, 2011, Defendants filed a Rule 18 motion to change the trial location from Eugene to Pendleton, Oregon.[1] Fed.R.Crim.Proc. 18.

# PERTINENT FACTS

Harney County borders California and is the southern most county in the Pendleton Division. The Pendleton courthouse is located in Umatilla County which is the northern most county in the division and borders Washington.

The distances from Harney County to the federal courthouse in Eugene or the

---

[1]On March 22, 2011, AUSA Frank Papagni joined AUSA Engdall as counsel for the Government (CR 13). AUSA Engdall is set to retire in June 2011. At that time, AUSA Papagni will become sole counsel for the Government. He estimates the trial will take less than 13 days.

magistrate court in Pendleton are "somewhat similar" with Pendleton being about an hour closer.[2] *Def. Mot. at 3.* Eugene's courthouse is one and a half hours closer to the Portland offices of Defendants' attorneys than the Pendleton courthouse.

Because Defendants' motion does not disclose the number and identity of their witnesses along with where they live and the materiality of their testimony, it is difficult to assess the degree of hardship that would be caused to defense witnesses by driving an additional hour to Eugene. And, whatever that hardship, it would be offset by saving Defendants' lawyers an additional hour and half of travel time.

This Court has presided over trials in Pendleton and can evaluate whether the court facilities in Eugene are superior to those in Pendleton's historic courthouse for efficiently trying a 13-day complex case.

For example, in Eugene's courtrooms, the parties' numerous exhibits can be presented via the evidence presentation system (EPS) and viewed by the court, parties, witness(es) and jurors on computer monitors. The availability of EPS in Eugene's courthouse will substantially reduce the trial's length. A trial in Pendleton's courthouse will require the parties to hand-place each exhibit on an overhead projector and adjust it for viewing. Further, having a full support staff in Eugene would

---

[2]Regardless of the route, witnesses from Harney County travel through Burns, Oregon. Burns to Eugene is approximately 258 miles, and Burns to Pendleton is about 197 miles. Eugene is approximately 111 miles from Portland; whereas, Pendleton is about 210 miles.

PAGE 3 - GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE AND EVIDENTIARY HEARING

facilitate this Court's ability to try a lengthy complex case.

Because the accommodations in Eugene/Springfield are far more numerous than those available in Pendleton, it will be more convenient and likely less expensive for Defendants, family, defense attorneys and the parties' witnesses as well as jurors to have this lengthy and complex case tried in Eugene.[2]

Defendants' concerns about weather affecting travel when driving over the Santiam Pass seems somewhat self-created since they requested an October trial date setting as opposed to one in mid-June to mid-September. And, such concerns are unsupported by weather or Oregon Department of Transportation (ODOT) records documenting when there have been hazardous driving conditions over the pass during the first two weeks of October.

Moreover, if the weather and road conditions on the Santiam Pass (elevation 4,817 feet), are hazardous, there would likely be similar difficult driving conditions on the Canyon Creek (elevation 5,152 feet), Beech Creek (elevation 4,687 feet) and Meadow Brook (elevation 4,127 feet) summits which would be traversed by defendants and witnesses driving Highway 395 from Harney County to Pendleton.

---

[2] For example, less than a half a mile from the Wayne Morse Courthouse in Eugene is a Marriott Residential Inn which offers daily, weekly, and biweekly rates. See www.marriott.com. In Pendleton, according to the Chamber of Commerce, including recreational vehicle parks, there are less than 30 facilities for lodging. See www.pendletonorcoc.weblinkconnect.com.

PAGE 4 - GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE AND EVIDENTIARY HEARING

Should adverse weather severely strike the Santiam Pass during early to mid-October and prevent vehicles driven by Defendants and their witnesses on their cattle ranches in the high desert winters from being able to timely surmount it, then Horizon Air offers daily, reasonably priced, morning, afternoon and evening, 45-minute round trip flights from Redmond to Eugene.  See www.alaskaair.com.  The Government is unaware of any commercial airlines that fly from Redmond to Pendleton.  Finally, if hazardous road conditions are legitimate concerns for changing trial location, the problem can be completely avoided by advancing the trial date to mid- September.[3]

Defendants' compare only Harney and Lane counties when claiming "the Willamette Valley is an environment alien to the Defendants and the vast majority of their (unidentified) witnesses."  *Def. Mot. at 4, 5 n. 3, Ex. 1 and 2.*  This restricted comparison ignores the rural and urban diversity of the jurors who will be drawn from a pool of citizens from eastern Oregon's Deschutes County (located on the east side of the Cascade Mountains and borders the northwest border of Harney County),

---

[3]Currently, the Court has one criminal case set for September 14, and civil cases set for October 12 and 19.

Oregon's coastal counties, Coos, Lane and Lincoln, and the Willamette Valley – Benton, Douglas, Lane, Linn and Marion Counties.

Defendants "dramatically" describe the "vast differences" between "Eugene" "Lane County" and the cattle country of "Eastern Oregon." *Def. Mot. at 4-5*. But, their focus on only one of the eight Eugene Division counties overlooks significant similarities.

For example, in 2010, cattle sales accounted for 20% of the agricultural commodity sales in Coos County, 40% in Deschutes County, 29% in Douglas County, and 18% in Lincoln County. While only 9% of its agricultural commodity sales were of cattle, every Saturday, year-round, Lane County's Junction City hosts a cattle auction which attracts cattlemen and women from western and some eastern Oregon counties.[4] The state capitol and the home office of the Oregon Cattlemen's Association are in Marion County.[5] Oregon State University, renown statewide for educating the best farmers and ranchers in Oregon, is located in Benton County. And, Oregon Cattlemen's Association President and rancher Bill Hoyt, a good friend of the

---

[4] Eugene Livestock Auction, 92380 Highway 99, Junction City, Oregon.

[5] *Source: Economic Information Office, Oregon State University;* and, Oregon's Cattlemen Association, 3415 Commercial St. Suite 217, Salem, Oregon.

PAGE 6 - GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE AND EVIDENTIARY HEARING

Defendants, resides in Lane County.[6]  These foregoing facts present a more balanced perspective of similarities and differences the Defendants may have with jurors in the Eugene Division.

Defendants' concerns about Eugene Division jurors' ability to distinguish between a forest and rangeland fire also appear overstated. *Def. Mot. at 4-5*.  The Government anticipates jurors will hear testimony from both parties' witnesses that unlike forest lands, managing eastern Oregon rangeland requires the prudent use of fire.  Jurors from the Eugene Division like those in the Pendleton Division, are capable of discerning the difference between a forest and rangeland fire.

## APPLICABLE LAW

A defendant has no constitutional or statutory right to a trial in a specific division within the district where the crime was committed.  *United States v. Wipf*, 397 F.3d 677, 686 (8th Cir. 2005) (*quoting United States v. Davis*, 785 F.2d 610, 616 (8th Cir. 1986); *In re Chesson*, 897 F.2d 156, 158-59 (5th Cir. 1990); *United States v. Florence,* 456 F.2d 46, 50 (4th Cir. 1972).  The location of intra-district criminal trials

---

[6]In a June interview with Jeff Barnard, an Associated Press Environmental writer, Bill Hoyt opined that there were no better people in the world than the Hammonds" and if he had to "choose between Dwight Hammond and BLM, (he) would choose Dwight Hammond in a heartbeat.  In a heartbeat." *See KATU , Oregon Ranchers Charged with Arson and Threats*, June 21, 2010.

are controlled by Rule 18 of the Federal Rules of Criminal Procedure. *United States v. Scholl*, 166 F.3d 964, 969-70 (9th Cir. 1999).

Rule 18 states in pertinent part that: " * * * The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed.R.Crim.P. 18.

"In deciding the place of trial within the district the court must balance the statutory factors of the convenience of the defendant and witnesses with the prompt administration of justice." *In re Chesson*, 897 F.2d at 159; *cf. United States v. Stanko*, 528 F.3d 581 (8th Cir. 2008)(reversing conviction because court had not considered the convenience to witnesses and defendant *and* the government's concession when denying transfer).

A court has considerable discretion to fix the place of trial within the district. *United States v. Scholl*, 166 F.3d 964, 969 (9th Cir. 1999)(denial of a motion to transfer should be overruled only if the district court abused its discretion); *United States v. Herbert*, 698 F.2d 981, 984 (9th Cir. 1983).

"A district court judge has broad discretion in determining where within a district a trial will be held, and to overturn the court's decision the defendant must prove abuse of that discretion or prejudice." *United States v. Davis*, 785 F.2d at 616 (citations omitted). "Absent any prejudice to the defense, the decision of the trial court

(denying defendant's Rule 18 motion) cannot be considered an abuse of discretion." *United States v. Anderson*, 626 F.2d 1358, 1375 (8th Cir. 1980).

## SUMMARY OF ARGUMENT

When evaluating the merits of a motion to transfer a trial's location, Rule 18 requires the Court balance, among other factors, the degree of inconvenience to defendants and witnesses with the availability of a courthouse where justice can be promptly and efficiently administered.

Defendants want their trial transferred to save them and an unknown number of witnesses an additional hour of driving while adding an hour and a half to the defense attorneys' travel time to avoid being tried in what they characterize as an "alien environment." But, the inconvenience caused to their driving to Eugene and having a trial in an urban/rural environment as opposed to a primarily rural environment is outweighed by the benefit of being tried in a courtroom which can efficiently litigate a lengthy complex case before impartial jurors.

# ARGUMENT

### Introduction

Defendants' motion is akin to the one in *United States v. (James) Hammond*, 1996 WL 535435 (D. Or.). In *Hammond*, United State District Court Judge Frye considered a defendant's Rule 18 motion to fix the place of his contempt and failure to file income tax trial in Pendleton rather than Portland.

*Hammond* wanted a November trial in Pendleton which was about 180 miles from his residence in Vale. He argued it would be more convenient for him and his witnesses than driving an additional 210 miles to Portland. *Hammond* also argued that almost all of the investigation was conducted in Eastern Oregon and most, if not all, of the defense witnesses resided in Eastern Oregon.

The Government opposed, observing defense witnesses would be required to travel a substantial distance regardless of whether the case was transferred to Pendleton, and a transfer would cause unwarranted additional costs as well as significant hardship to its witnesses.

After considering the Rule 18 factors, Judge Frye denied the Rule 18 motion finding "[i]t would be a hardship upon a number of witnesses for this court to set the trial in Pendleton," and observed *Hammond* and his witnesses would still have "to travel some 180 miles from Vale, Oregon to Pendleton, Oregon for trial."

### Travel to Courthouses

Defendants cite *United States v. Stanko*, 528 F.3d 581 (8th Cir. 2008), to claim "it would be an abuse of discretion to deny Defendants' request for trial in Pendleton." *Def. Mot. at 8*.  But, the facts in *Stanko* are not synonymous to those in this case.

In *Stanko*, the defendant, witnesses, jurors, and the crime's location were 400 to 600 miles away from the courthouse in Omaha, Nebraska, **and** the Government conceded "convenience to Stanko and the witnesses would have overwhelmingly supported holding trial in North Platte (Nebraska)." *Id. at 583-86*.  Nevertheless, the district court denied defendant's motion to transfer the trial from Omaha to North Platte.

The Eighth Circuit ruled that "[w]hile the district court retains considerable discretion in determining the place of trial, that discretion is contingent upon the court's consideration of the factors in Rule 18 when ruling on a proper motion for change of venue.  Although we cannot say that proper consideration would have necessarily resulted in the transfer of the trial to North Platte, absent such a showing of consideration, we are left with no alternative than to reverse . . . ." *Id. at 586*. Thus, the *Stanko* Court only holds the denial of motion to transfer trial will be reversed if the district court has not properly considered factors in Rule 18.

Similarly, in *United States v. Garza*, 593 F.3d 385 (5th Cir. 2010), without considering the factors in Rule 18, the district court decided, *sua sponte*, to transfer the defendant's trial to a courthouse more than 300 miles from his residence and alleged crime location. The decision required defendant to change attorneys and significantly delayed the trial. "Because the district court . . .provided *no reasoning* when it transferred Defendant's case, (the Fifth Circuit) vacated Defendant's convictions and remanded for a new trial in a venue determined in accordance with the dictates of Rule 18." *Id. at 387 (italics supplied).*

Here, Defendants and witnesses are not being required to travel 400 to 600 miles as in *Stanko,* or more than 300 miles as in *Garza,* or even an additional 210 miles as in *Hammond.* The additional 60 miles Defendants and witnesses will drive to the courthouse in Eugene as opposed to the one in Pendleton does not constitute an "undue hardship," nor would it "prejudice" the defense by significantly delaying the trial. A Eugene trial location would be an additional 99 miles closer for Defendants' attorneys. *United States v. Garza*, 593 F.3d at 390 (citing *United State v. Lipscomb*, 299 F.2d 303, 340 (5th Cir. 2002)(noting the location of the defense attorney's practice when considering "convenience" factor).

Should adverse weather make driving conditions difficult, several daily flights would be available for Defendants and witnesses from Redmond to Eugene, but not to

PAGE 12 - GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE AND EVIDENTIARY HEARING

Pendleton. *See United States v. Scholl*, 166 F.3d 964, 970 (9th Cir. 1999)(convenience of trial location enhanced in part by availability of daily flights).

### "Alien Environment" Argument

In *United States v. Burns*, 662 F.2d 1378, 1383 (11th Cir. 1981), the Eleventh Circuit reviewed the denial of a motion to transfer the trial based only on the judicial district's policy not to have trials in the outlying divisions. It held when a district court decides a trial will be held in "an environment alien to the defendant" then, over proper objection, the record must reflect the decision was made after the judge considered the factors incorporated in Rule 18. *Id., see also United States v. Garza*, 593 F.3d at 390. Since the record in *Burns* did not provide the appellate court "any hint of a reason why" the trial should not be transferred, the ruling was reversed and the case remanded for a new trial. 662 F.2d at 1383, 1385.

Defendants' compare only Lane and Harney counties to assert "the *Willamette Valley* is an environment alien to the defendants and the vast majority of their witnesses." *Def. Mot. at 4 (italics supplied)*. They offer this constricted comparison to equate themselves with the defendants in *Burns. Id. at 9*. But, when considering the similarities as well as the differences between Harney County and all eight counties covered by the Eugene Division, a more balanced view is obtained which undercuts Defendants' "alien environment" argument for changing the trial's location.

**Impartial Jurors**

Defendants also argue they are "Eastern Oregonians whose fate should be determined by fellow Eastern Oregonians." *Def. Mot. at 10.* This argument reveals their real motive for seeking to transfer the trial, which is not to have diverse and impartial jurors, but rather to have jurors who may be more receptive to a defense theory portraying Defendants as victims of BLM retaliation for their criticism of BLM's rangeland management policies. While a tactically understandable defense objective, a defendant is not entitled to transfer a trial to a location within the judicial district simply because there is a higher percentage of jurors with similar heritage and race, or similar vocation and biases. *See United States v. Herbert*, 698 F.2d at 984 (affirming denial of a Native American defendant's Rule 18 motion to transfer his trial to a place where the jury pool would have a higher percentage of Native Americans).

Nor do defendants have the right to have their trial in or jurors summoned from a particular division of the state and district where the crime was committed. *United States v. Richardson*, 537 F.3d 951, 959 (8th Cir. 2008)(*citing United States v. Stanko*, 528 F.3d 581, 584 (8th Cir. 2008)).

**Prompt Administration of Justice**

When deciding a trial's intra-district location, the court also must give due regard for the prompt administration of justice. Rule 18, Fed.R.Crim.P.; *In re*

*Chesson*, 897 F.2d at 156 (court must "weigh the impact the trial location will have on timely disposition of the instant case").

This case was initially postponed because the parties asserted the matter to be litigated was "complex" (CR 6). A review of the indictment affirms the assessment for it alleges a conspiracy spanning twenty-four years, five arsons, illegal operation of aircraft, threats to assault federal officers and tampering with a witness.

When Defendants sought a second postponement for more than nine months, they estimated this complex case would take more than two weeks to try (CR 11).[7] And, the parties trial will be held on or about the scheduled date. *United States v. Burns*, 662 F.2d at 1382 (speedy trial considerations incorporated in Rule 18).

Seeking to move the trial's location, Defendants contend a "trial in Eugene would have no positive effect on the disposition of the case." *Def. Mot. at 11*. They assert "there is nothing on that side of the scale to weigh against the defendants' convenience." *Def. Mot. at 8*.

However, as to the trial's length, Defendants' motion omits any discussion of the two courthouses' capabilities to litigate what they acknowledge will be a lengthy

---

[7]Defendants' "Google search" showed there was more publicity about this case in the Willamette Valley than in Eastern Oregon. *Def. Mot. at 10*. The most recent story about the case the Government could find on "Google" was by KATU in Portland, dated June 21, 2010. Consequently, pretrial publicity should be a non-factor in considering the trial's location in October 2011.

PAGE 15 - GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE AND EVIDENTIARY HEARING

and complex case. *See United States v. Truglio*, 731 F.2d 1123, 1130 (4th Cir. 1984)(court's facilities and ability to try lengthy complex case part of Rule 18 analysis). Had such a discussion been in their pleadings, Defendants' attorneys would have candidly concluded the facilities at the Eugene courthouse are far more capable to promptly and efficiently try this case than those at the Pendleton courthouse.

The Eugene courthouse has an evidence presentation system (EPS) that will substantially reduce the trial's length of this complex case. The parties' numerous exhibits can be quickly viewed by the court, parties, witness(es) and jurors on computer monitors.[8] The time witnesses will consume viewing and testifying about exhibits will be substantially shortened. Whereas, a trial in Pendleton's courthouse will require the parties to extract each exhibit from an exhibit book, hand-place it on an overhead projector then manipulate it so the relevant portion can be clearly viewed by all in the courtroom. Reducing the length of trial will reduce Defendants' litigation costs – as well as the Court's (jury expenses) and Government's (witness costs).

Further, while not a deciding factor, a trial in Eugene will also save judicial resources for it will enable this Court to also perform other judicial functions and avoid delaying rulings in other cases. *See generally, United States v. Truglio*, 731 F.2d at 1130 (the conduct of other matters pending before the court and requiring

---

[8] The fact discovery and pretrial motions can be resolved in Eugene neither favors or disfavors Defendants' motion to transfer. *Def. Mot. at 10.*

PAGE 16 - GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE AND EVIDENTIARY HEARING

attention during the same time span as the trial might suffer if the judge were compelled to function in an office not yet set up for judicial work).

In *Truglio*,, the Fourth Circuit reviewed the district court's denial of four defendants' motion to transfer the trial of a Racketeer Influenced and Corrupt Organizations (RICO) case to the city where they, all their witnesses and three defense attorneys resided. 731 F.2d at 1130. The district court decision to hold the small trial in the city in which the court had an established office was affirmed because the court had not yet set up an office in the city in which defendants resided. *Id.*

The Fourth Circuit held whether the lack of requisite facilities and support staff might jeopardize a court's ability to preside adequately over a complex case was an appropriate Rule 18 factor. *Id.* It found the lower court's "concerns reached beyond mere convenience and implicated fundamental interests of justice," and having balanced "the competing concerns with respect to venue," found no abuse of discretion. *Id.*

### Summary

Here, Rule 18 factors favor finding that the judicial facilities in Eugene will enable the parties and court to efficiently litigate this complex case and will benefit Defendants, their family and witnesses by significantly reducing the length of trial. This interest in the prompt administration of justice outweighs the modest increase in

convenience for Defendants by having the trial in Pendleton.

### Evidentiary Hearing

As apparent from the parties' pleadings, statistical data can be supplied by the parties to accentuate differences and similarities between western and eastern Oregon (*e.g.*, number of Starbucks coffee stores).  While Defendants have requested an evidentiary hearing, they have not explained why one is needed and what material evidence would be offered.

A judicial officer in the District of Oregon for more than three and half decades, and its Chief Judge from 1995 to 2002, this Court is uniquely equipped to evaluate Rule 18 factors and exercise its discretion in determining where this case should be tried.   Because this Court has everything it needs to decide this motion, an evidentiary hearing is not needed.

## **CONCLUSION**

Based on the foregoing, Defendants' motions to transfer the trial and for an evidentiary hearing should be denied.

DATED this 30th day of March, 2011.

                                          Respectfully submitted,

                                          DWIGHT C. HOLTON
                                          United States Attorney

                                          */s/ Frank R. Papagni, Jr.*
                                          FRANK R. PAPAGNI, JR.
                                          Assistant United States Attorney