S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
FRANK R. PAPAGNI, JR., OSB #762788
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Facsimile: (541) 465-6917
frank.papagni@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

(EUGENE DIVISION)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 10-CR 60066-HO |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' OPPOSITION** |
| | ) | **TO DEFENDANTS' MOTION** |
| v. | ) | **TO POSTPONE TRIAL** |
| | ) | **(CR 45, 46)** |
| STEVEN DWIGHT HAMMOND, | ) | |
| DWIGHT LINCOLN HAMMOND, JR. | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through S. Amanda Marshall, United States Attorney for the District of Oregon, and Frank R. Papagni, Jr., Assistant United States Attorney, respectfully opposes Defendants' motion to continue trial for the third time.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO POSTPONE TRIAL - Page 1

## Grounds Offered for Postponement

Essentially, Defendants seek another postponement of the trial for three reasons: (1) to review the additional discovery they requested; (2) the case remains, as it was declared in July 2010, complex; and (3) the state trial of one of the defense attorneys conflicts with the trial date of this case.

## Discovery and Prior Postponements

In March 2010, the Government made "a case presentation to counsel and defendants," and in April 2010, with the assistance of Senior Circuit Judge Leavy, engaged in an unsuccessful settlement conference." *11/8/2010 Tr. at 2 (AUSA Engdall)*.

On June 17, 2010, Defendants were indicted (CR 1).

On July 6, 2010, concurring with the parties' agreement, the court declared the case complex (CR 6). *7/6/10 Tr. at 5*. The court asked defense attorneys for a realistic trial date and they agreed to a fall setting.[1] After accommodating defense counsels state and federal trial conflicts and forewarned by Mr. Matasar that "we may need to reschedule the date," the trial was postponed until November 20, 2010, so defense counsel could complete their investigation. *Id.* at 5-7.

On November 8, 2010, Defendants wanted an additional 11-month

---

[1] Mr. Blackman thought "early fall." Mr. Matasar opined "late fall." *7/6/10 Tr. at 5*.

postponement to "complete their investigation" (CR 11). The Government opposed, and wanted a June trial date because AUSA Engdall, who participated in the four year investigation "since its inception" and presented evidence to the grand jury which returned the indictment, would be retiring "at the end of June" 2011. *11/8/10 Tr. at 2, 4-5*.

Mr. Blackman acknowledged "they (the Government) have provided to us their evidence that they accumulated during this four-year investigation . . . ," and the defense attorneys had gotten to "the site (of the alleged offenses) after (they) received discovery in late August."[2] *11/18/10 Tr. at 5*. But, the defense attorney wanted to have "our experts and our investigators on the site" and, they would be unable to do so until June. *Id. at 6*. They also wanted to "make sense out of the numerous CDs (discovery)" they had gotten from the Government. *Id. at 7*.

To ensure defense had a "meaningful opportunity to explore what may be a material and important component of their defense," Magistrate-Judge Coffin allowed the postponement of a trial that Mr. Matasar estimated would take "maybe two-and-a-half weeks." *Id. at 8-9*. Trial was rescheduled for October 5, 2011, with a status conference set for June 20, 2011 (CR 11).

On June 20, 2011, AUSA Engdall reported Defendants had received over 6,000

---

[2]   AUSA Engdall informed the court that defense counsel had received discovery on August 4, 2010. *11/18/10 Tr. at 6-7.*

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO POSTPONE TRIAL - Page 3

pages of discovery and requested "reciprocal discovery."[3] *6/20/22 Tr. at 1-2*.

Mr. Blackman reported:

"I think we're on schedule. The discovery that's been produced has been voluminous. It wasn't always easy to tell what it related to. And our meeting today with the government helped identify how, in the copying process, certain directions that were in the original materials didn't make it to the discovery as we received it. I'm confident the U.S. Attorney's Office is working diligently to resolve that. And we expect to have the discovery in a more accessible form in the next week or two.

We, of course, will honor our reciprocal discovery rights. The people we're working with have been telling us, well, there should be this, there should be that, and we keep asking Mr. Engdall for those things and the government has been responsive.

I think we can hold the trial date. We're hopeful that the discovery issues will be resolved in the next couple weeks. * * *" *Id. at 3-4*.

A status hearing initially scheduled for July 25, 2011, was reset for August 11, 2011 (CR 29, 30).

On June 28, 2011, AUSA Engdall retired, and was replaced by AUSA Papagni (CR 31, 32).[4]

On July 20, 2011, the Government provided defense attorneys with a witness list and motion for disclosure of alibi defense (CR 33, 34).[5]

---

[3]    Defendants' motions for discovery (CR 18, 26) generated the Government's motions for reciprocal discovery (CR 24, 29).

[4]    In July 2011, the case agent of the investigation, BLM Special Agent Dennis Shrader, retired. *8/11/11 Tr at 8*.

[5]    The Government listed 105 witnesses but was very "doubtful" it would call all of them. *8/11/11 Tr at 19*.

At the August 11, 2011, status hearing, the court was informed Defendants' had made additional discovery demands which were being addressed by co-counsel, AUSA Potter and paralegal Root. *8/11/11 Tr. at 2-7*.

Paralegal Root detailed for the court and defense the discovery previously provided and to be provided to Defendants. Additionally, the Government offered to provide "notes to the defense" of potential witnesses whose statements had not been reduced to a report, but opposed Defendants' demand for witnesses' original notes. *Id. at 8*.

Mr. Matasar explained the defense was not obligated to provided any discovery until the Government has complied with its obligations. *Id. at 21-22*. Accordingly, the defense contended the expert witnesses and investigators referred to by defense counsel in November 2010 remain unidentified in August 2011, less than 2 months before the scheduled October 5 trial.

Magistrate-Judge Coffin ordered "the government turn over to the defense the – *all* investigator notes of interviews with witnesses that the government intends to call in its case in chief. The timing of that will be up to Judge Hogan." *Id. at 24* (emphasis supplied). The Government estimated that it could comply with the court's discovery order by September 27, and suggested a November 28 or January 16 trial date. *Id. at*

46.[6]

Mr. Matasar announced he had "another trial," on January 16, 2012. *Id.* "[A] week long sex abuse trial – retrial following a successful post-conviction," although he was "not the lead counsel on that case but (was) doing part of the case." *Id.* Both defense attorneys announced trial conflicts in November, so Magistrate-Judge Coffin scheduled trial for January 17, 2012, since "the 16th is a holiday" (CR 42). *Id. at 47.* Argument on pretrial motions was set for December 6, 2011 (CR 43).

Two weeks later, defense attorneys sent the Government a letter with 19 "requests" for discovery which included a request for incident logs and reports for over 2,000 fires.

On September 26, 2011, the Government sent a 7 page discovery index and 19 CDs (approximately 12,000 pages) of discoverable materials to the defense attorneys, and responded to their latest discovery requests. There were some delivery and technical problems, the majority of it was review able.

While ignorant of Defendants' anticipated defense(s), the Government believes only a limited amount of the recent discovery is relevant at trial or sentencing and the core of the Government's case has already been disclosed in discovery. However, in support of his postponement motion, Mr. Matasar declares that his preliminary review indicates that "a large amount of information" "is significant to the defense." *See*

*Declaration of Matasar at 3.*

Additionally, recognizing the timing of disclosure had been left up to this Court, the Government made clear to the defense attorneys that additional witness statements, interview reports, grand jury testimony, along with mitigating, exculpatory and impeaching information testimony would be provided to them no less than 4 weeks before trial.

As of October 1, 2011, the Government has supplied defense attorneys with over 18,000 pages of discovery. It is waiting to receive its first page of reciprocal discovery.

## Case Complexity

This is a case of a father and son who are longtime cattle ranchers who are very frustrated with BLM land use policies and decided to use "dry lighting" events as an opportunity to set fire to their federal grazing allotments in the Steens Mountain areas to their financial benefit. When setting these fires, they seriously endanger BLM firefighting personnel and violate FAA rules. In attempting to cover up their crimes, they attempt to tamper with the BLM witnesses.

This case also involves Defendants burning out two hunters and a guide from their campsite after defendants engaged in slaughtering deer on their federal grazing allotment without having hunting licenses.

While much of the voluminous discovery pertains to the investigation of the

arson fires, BLM land use, investigation and personnel policies and documents, the prosecution's case primarily rests on the hunters, guide, witnesses who saw only the defendants within a short distance of the recently ignited fires, or heard admissions from a defendant about setting the fires.

### Conflicting Trial of State Case

Linn County Deputy District Attorney Ani Yardumian is the prosecutor in *State v. Sundberg*, Linn County Circuit Court Case No. CC05102194.  After having listened to every Linn County Circuit Court appearance from when the *Sundberg* case was remanded from the Oregon Supreme Court until August 11, 2011 (when Mr. Matasar informed Magistrate-Judge Coffin of a potential trial conflict), Ms. Yardumian  is prepared to testify "there was no mention whatsoever of (Mr.) Matasar being involved in this (Sundberg) case."

Specifically, she would attest that:

On March 7, 2011, the first court appearance after the case was remanded to Linn County Circuit Court that Ms. Shipsey appeared alone and made no mention of Mr. Matasar as being co-counsel.  She introduced the case by saying "Krista Shipsey on behalf of Mr. Sundberg.  I (not our firm or Mr. Matasar) was just retained last week by Mr. Sundberg's family and called on Thursday to be here today."  Ms. Shipsey informed the court how much time she would need to become acquainted with the case.

On April 5, 2011, at Ms. Shipsey's request, a release hearing was held. Mr. Matasar was not present and, again, never mentioned by Ms. Shipsey during the 45-minute hearing. Because her office was in Portland, Ms. Shipsey argued that if Mr. Sundberg remains in custody, she could not have adequate contact with him to prepare a defense.

On June 6, 2011, Deputy District Attorney Eder appears for Ms. Yardumian, and so informed the court. Ms. Shipsey responded: "Krista Shipsey on behalf of Mr. Sundberg." When discussing potential dates for the trial, the court asked Ms. Shipsey if she had her schedule. She replied: "Yes, I have mine," but makes no mention that Mr. Matasar was her co-counsel and she would need to consult with him regarding his potential court conflicts.

On July 11, 2011, Deputy District Attorney Yardumian and Ms. Shipsey appeared in court to schedule the 5-day trial and pretrial motions hearing. Again, Ms. Shipsey does not inform the court that she will need to check Mr. Matasar's calendar because he would be co-counsel on the case. When Ms. Yardumian asked for an earlier trial date, Ms. Shipsey only informs the court of her conflicting trials.

Before August 11, 2011, other than the fact Ms. Shipsey's letterhead had Mr. Matasar's name on it at the top, Ms. Yardumian was unable to find anything which would have led her or the court to conclude that anyone other than Ms. Shipsey would be trying the *Sundberg* case.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO POSTPONE TRIAL - Page 9

## Argument

Before March 2010, Mr. Matasar was the attorney for the Hammond family. After an unsuccessful effort to resolve the case, he receive significant amount of discovery in August 2010. In November 2010, along with his co-counsel, he received an 11-month postponement in order to have a "meaningful opportunity to explore what may be a material and important component of their defense."

In August 2011, the trial was again postponed so he could receive and review additional discovery. As promised, it was sent to him on September 27, 2011. After the trial was re-scheduled for January 17, 2012, he made 19 additional requests for discovery which he has used as partial justification for another postponement of trial.

While announcing on August 11th, in federal court that he had a trial in state court which would conflict with a January 12th trial, it was apparently unknown to the Linn County prosecutor and court that Mr. Matasar was co-counsel on that case.

The reasons offered by Mr. Matasar do not warrant postponing trial of this case. However, if the Court's schedule permits, the Government supports a trial setting later in January 2012 to accommodate the state court case. However, it opposes a longer postponement because the Government will be prejudiced by that delay and co-counsel is not available until mid-April 2012.

Witnesses are ready to testify to criminal conduct occurring as recently as 5 years ago and almost 30 years. The Government has met and is meeting its discovery

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO POSTPONE TRIAL - Page 10

obligations.  Defendants have already received over 18 months since the indictment was returned to prepare for trial.

## Conclusion

Based on the foregoing, the Government opposes Defendant's motion to continue the trial date beyond January 2012.

DATED this __th day of October, 2011.

                Respectfully submitted,

                S. AMANDA MARSHAL
                United States Attorney

                */s/ Frank R. Papagni, Jr.*
                FRANK R. PAPAGNI, JR.
                Assistant United States Attorney