S. AMANDA MARSHALL, OSB #953473
United States Attorney
District of Oregon
FRANK R. PAPAGNI, JR., OSB #762788
AMY E. POTTER
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:  (541) 465-6771
Facsimile:   (541) 465-6917
frank.papagni@usdoj.gov
amy.potter@usdoj.gov
      Of Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 10-CR 60066-HO |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY** |
| **STEVEN DWIGHT HAMMOND and DWIGHT LINCOLN HAMMOND, JR.,** | |
| **Defendants.** | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through Amy E. Potter and Frank Papagni, Assistant United States Attorneys, hereby submits this response to defendants' motion to exclude expert testimony.

///

///

**Government's Response to Defendants' Motion to Exclude Expert Testimony      Page 1**

## INTRODUCTION

Defendants are charged with conspiracy, arson and violation of Federal Aviation Administration regulations. A portion of the case will be devoted to expert witnesses. The government intends to call expert witnesses regarding the cause and origin of the fires in the indictment, experts regarding the scope and value of the damage to government property and an expert regarding certain footprints and tracking as it relates to a certain fire. In addition, there are several fact witnesses that may offer limited opinion/expert testimony in their area of experience. While the defense has identified ten expert witnesses in its motion, the government is filing with this response its formal Rule 16 Expert Witness Notice that will identify all expert witnesses and identify where in discovery the experts' qualifications and opinions can be located. This may change the scope of defendants' challenge.

Defendants' motion challenges the admissibility of ten experts they have identified through discovery, contending that based on their review of the discovery, none of the expert testimony proffered meets the standard for expert testimony. Defendants argue that (1) the government will not be able to establish that many of the government experts are qualified as experts; (2) expert testimony on the path of travel (one expert - Joe Flores) is not a permissible subject of expert testimony and (3) that testimony regarding the "cause" and origin" of the various fires (multiple experts), while a permissible subject of expert testimony, is not reliable in this case because defendants believe that the government experts failed to follow reliable scientific methods. Defendants request a hearing to further explore the expert witnesses' qualifications and basis for testimony and request possible supplemental briefing.

The government acknowledges that a *Daubert* hearing of some type will be required because defendants are challenging the qualifications of some of the experts and the reliability of the science, but disagrees with defendants that a wide scale hearing questioning every expert is necessary.[1]  With respect to challenges to expert qualifications, the government is prepared to submit the CV and experience of any expert the defense challenges to the Court for a preliminary review.  A hearing need be conducted only on those experts the Court feels need additional questioning regarding their qualifications.  With respect to experts that the defendants allege did not follow reliable scientific techniques, again, once defendants identify which experts they are challenging on that basis, the government will make them available.  To the extent the defense challenge is simply that one technique must be followed, a preliminary determination on that issue may be necessary.  At bottom, each of the experts identified by the government has had extensive experience in their field of expertise and followed acceptable scientific methods in reaching their opinions.  The government believes each expert should be permitted to testify.

## ARGUMENT

*1.    Legal Background*

Federal Rules of Evidence 702 provides the operative standard for the admissibility of expert testimony, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)**,** governs the court's application of Rule 702.

---

[1] Defendants have not yet provided notice of their proposed experts or any discovery in this case.  A *Daubert* hearing may also be necessary with respect to the defense experts and the government believes that a single *Daubert* hearing would be more efficient.  Thus, the government respectfully requests that the defense provide timely notice of and discovery involving the defense experts so the government can determine if a *Daubert* hearing is necessary and to obviate the need to request a later, separate hearing.

**Government's Response to Defendants' Motion to Exclude Expert Testimony        Page 3**

> Rule 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

A court must consider the probativeness and reliability of expert testimony in determining its admissibility. *Daubert*, 509 U.S. at 589 (1993); Fed. R. Evid. 702. *Daubert* charged trial judges to act as "gatekeepers" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (quoting *Daubert*, 509 U.S. at 589). The gatekeeping process involves a two step inquiry: First, a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. (quoting *Daubert* at 592-93). This involves focusing "on [the] principles and methodology, not on the conclusions that they generate." *Id*. (quoting *Daubert* at 595). Second, the court must ensure that the testimony is relevant and will aid the trier of fact. *Id*. (citing *Daubert* at 592-93). It assists "when it provides information beyond the common knowledge of the trier of fact." *Id*. (citing *Daubert* at 591).

*Kumho Tire*, *Daubert*'s progeny, "heavily emphasizes that judges are entitled to broad discretion when discharging the gatekeeping function." *Hankey*, 203 F.3d at 1168 (citing *Kumho Tire*, 526 U.S. at 152). "Indeed, not only must the trial court be given broad discretion to decide *whether* to admit expert testimony, it 'must have the same kind of latitude in deciding *how* to test

an expert's reliability.'" *Id*. (quoting *Kumho Tire*, 564 U.S. at 152). This obligation does not, however, require the court to hold a separate Daubert hearing. *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir.2000) ( "Nowhere ... does the Supreme Court mandate the form that the inquiry into relevance and reliability must take....").

In *Daubert,* the Court suggested several factors that often play a role in a Rule 702 inquiry, but cautioned that "[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." *Id.* at 593. Those *Daubert* factors are: (1) "whether [a theory or technique] can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" (4) "the existence and maintenance of standards controlling the technique's operation;" and (5) "general acceptance...of a relevant scientific community." *Id.* at 593-94 (quotations and citations omitted); *See also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (crafting nonexclusive list of six "preliminary questions of law determinations" a trial judge must make when determining whether to admit testimony under Rule 702 including (1) whether the opinion is based on scientific, technical, or other specialized knowledge; (2) whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue; (3) whether the expert has the appropriate qualifications; *i.e.,* some special knowledge, skill, experience, training or education on that subject matter; (4) whether the testimony is relevant and reliable; (5) whether the methodology or technique the expert uses "fits" the conclusion (the expert's credibility for the jury); and (6) whether the probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time).

So long as "an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). A trial court must be careful to avoid supplanting the adversary system or the role of the jury: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also* Advisory Committee Notes to the 2000 Amendments to Rule 702 ("[R]ejection of expert testimony is the exception rather than the rule.... [T]his amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert.").

    2.    *Expert Qualifications*

Defendants first argue that "the government will be unable to establish at the hearing...that many of the persons listed above meet [the Rule 702] basic criterion." Def. Mot. at 9. While the defendants appear to be arguing that at least some of the experts are not qualified, they have not identified the specific experts that they believe are not qualified. The government has provided in discovery the CVs for its experts along with training records and other information where applicable and has identified those items in the Expert Notice by Bates number. Without a list of which experts the defense feels are not qualified, it is difficult to make any specific arguments about any expert.

The government believes all of its experts are qualified in their field and area of expertise. Generally, there are a variety of ways in which an expert can be found to be qualified. For example, with respect to arson investigators, training and firefighting experience have been important in determining that an expert is qualified. *See United States v. Markum*, 4 F.3d 891,

896 (10th Cir. 1993).  The government believes that for each individual witness they have received the necessary training or have had the necessary experience to offer the opinions the government wishes to offer.  Specifically, the government's fire cause experts have all had extensive training and experience in wildland firefighting and investigation.  Many have published in this area, are members of the International Association of Arson Investigators, and have taught courses of wildland fire issues.  The fact witnesses the government has identified who may offer limited opinions based on their personal observations are all experienced wildland firefighters who have training in identifying and fighting fires.  The expert witnesses regarding the costs of the fires have spent their entire careers dealing with conservation, stabilization and rehabilitation of damaged wildland areas and have received extensive training in those areas.

     Once the defendants identify which experts they believe are not qualified, the government is prepared to submit to the Court with the specifics of any expert's qualifications in advance of a hearing in an effort to avoid a extensive, unnecessary hearing.  *See Millenkamp v. Davisco Foods Intern.,* 562 F.3d 971, 979 (9th Cir. 2009) (("The parties provided the district court with briefing on [the expert's] scientific expertise and proposed testimony prior to trial.  The district court could properly determine that this information comprised an adequate record from which the court could make its ruling."); cf *United States v. Easchief*, 363 Fed. Appx. 526, 528 (9th Cir. 2010) (unpublished) (holding that district court did not err in denying *Daubert* hearing because defendant made only conclusory allegations of unreliability).  The government, of course, is also prepared to further offer the experts as necessary at a hearing.

\\

\\

**Government's Response to Defendants' Motion to Exclude Expert Testimony**     **Page 7**

      3.     *Expert Testimony Related to Footprints and Path of Travel*

Defendants contend that human tracker testimony is not a permissible subject of expert testimony. The government presumes, therefore, that the defense wishes to strike the testimony of Joe Flores, an expert in tracking for the Border Patrol. While defendants cite to one district court opinion questioning the role of tracker testimony at trial, *see United States v. Hernandez-Bautista*, 159 F. Supp. 2d 410, 414 (W.D. Tex. 2001), there are other cases in which tracker evidence has been permitted in some fashion. *See United States v. Vasquez-Olea*, 2011 WL 6739496 (9th Cir. 2011) (unpublished) (noting that defendant's admissions were corroborated evidence of how defendant was tracked by agent)*; United States v. Sandoval-Galvez*, 403 Fed. Appx. 251, 252 (9th Cir. 2010) (unpublished) (finding error of admission of certain records harmless because government offered significant evidence including tracking evidence to support conviction); *United States v. Miguel*, 952 F.2d 285, 286 (9th Cir. 1991) (describing how defendant was tracked); *United States v. Rodriguez-Mireles*, 896 F.2d 890 (5th Cir. 1990) (discussion testimony about tracking methods and the conclusions that can be drawn from it); *United States v. Maldonado-Campos*, 920 F.2d 714, 716 (10th Cir. 1990) (describing tracking evidence in a case)   It is notable that in *Hernandez-Bautista*, that the district court had previously determined that the testimony was not expert testimony and thus, could only be presented in a limited fashion, but felt that the jury gave it too much weight. 159 F. Supp. 2d at 414. This Court must evaluate the proposed testimony of Joe Flores regarding tracking and determine admissibility. The government believes it will be able to show that the testimony qualifies as expert testimony, but even if the Court finds it is not expert testimony, certainly the factual evidence about the tracks and the location is relevant, admissible evidence. The

**Government's Response to Defendants' Motion to Exclude Expert Testimony          Page 8**

government is prepared to have Mr. Flores testify as necessary at a *Daubert* hearing to make this determination.

    4.    *Reliability of Origin and Cause Data*

As defendants properly recognize, testimony regarding the cause and origin of a fire is a proper subject of expert testimony. *See United States v. Gardner*, 211 F.3d 1049, 1054 (7th Cir. 2000); *see also United States v. Lundry*, 809 F.2d 392 (7th Cir. 1987). Fire cause and origin experts may base their opinions on a variety of facts including "reports, photographs, and third-party observations, which may not have been admissible into evidence" because "these materials are facts or data 'of a type reasonably relied upon by experts' in the field of fire cause and origin." *Gardner*, 211 F.3d at 1054 (citations omitted); *see also Markum*, 4 F.3d at 896 (noting that arson expert relied on personal observations and observations of the firefighters who worked for him).

Defendants primary claim appears to be that they believe that some of the experts did not gather necessary facts and data and failed follow the NFPA 921: Guide for Fire and Explosion Investigations and thus, their opinions are not reliable. It is unclear from the motion whether defendants are challenging every fire investigator the government intends to call or just select experts, but, generally, the government believes that their experts follow reliable scientific protocols and methods. While NFPA 921 may be a recognized authority and a reliable method endorsed by a professional organization, *see Fireman's Fund Ins. Co. v. Cannon U.S.A.*, 394 F.3d 1054, 1058 (8th Cir. 2005) (in case involving fire of store, noting that NFPA 921 is a reliable method), it does not purport to be the only method that an investigator may rely upon.

Indeed, all of the cases cited by defendants regarding NFPA 921deal with structure or equipment fire issues.[2] The fires in this case are wildland fires.  Many of the government's experts will testify that they relied on the Wildfire Origin & Cause Determination Handbook, a handbook that was created by the National Wildfire Coordinating Group (NWCG) Fire Investigation Working Team.  The NWCG is a group that coordinates wildfire management agencies.  The handbook was developed by the Fire Investigation Working Team which included representatives from the federal agencies tasked with fighting wildland fires (BIA, BLM, NPS. USFWS, USFS), the Federal Law Enforcement Training Center, the Department of Homeland Security, the International Association of Arson Investigators and state agencies including the Oregon Department of Forestry.  Two of the government's experts (Gary White and Carrie Bilbao) contributed to the handbook.  The handbook specifically advises that it should be followed in the field and that the information contained in the handbook is consistent with the NFPA 921.  Reliance on the NWCG handbook was appropriate.

So long as the experts relied on general scientific principles, their opinions are admissible.  Moreover, even if there are any arguable deficiencies in the standards and the conclusions of the experts, those go to the weight, not the admissibility, of the opinion. Defendants may wish to challenge the type of testing or the conclusions of the experts but those issues are for the jury to consider in weighing an expert's testimony, not a basis for excluding the

---

[2] *See Shuck v. CNH America, LLC,* 498 F.3d 868 (8th Cir. 2007) (fire in a combine engine compartment)*; Bryte ex rel. Bryte v. American Household, Inc.,* 429 F.3d 469 (4th Cir. 2005) (fire purportedly caused by electric throw)*; Thompson v. Whirlpool Corp.*, 2008 WL 2063549 (W.D. Wash. 2008) (fire in home purportedly caused by refrigerator).

testimony. *See Thompson v. Whirlpool Corp.*, 2008 WL 2063549, 5 (W.D. Wash. 2008) (noting that failure to test is for jury to consider not a basis for exclusion).

It is unclear what the experts failed to do in this case or which experts are deficient. The government is prepared to submit evidence either in the form of documentary evidence or testimony at the hearing regarding each expert's methodology and basis for their opinion if specific experts are identified. The government believes that all of its experts are qualified, reliable and meet the *Daubert* test.

## CONCLUSION

Defendants have generally stated that they believe the government's experts are either not qualified or not reliable to testify in this matter. In fact, the government plans to call numerous experts who have decades of experience in their field of expertise. The government is prepared to proceed at the hearing or in briefing prior to the hearing to set out the specifics of the experts qualifications or reliability once it is clear on precisely which experts are being challenged.

Dated this 31st day of January 2012.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney


/s/ Frank R. Papagni, Jr.
FRANK R. PAPAGNI, JR.
Assistant U.S. Attorney

/s/ Amy E. Potter
AMY E. POTTER
Assistant United States Attorney